**United States District Court**
For the Northern District of California

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    HARPAL S. CHEEMA,                          No. C 04-03869 SI

9           Plaintiff,                          **ORDER GRANTING PETITION FOR**
                                                **WRIT OF HABEAS CORPUS**
10      v.

11   MICHAEL CHERTOFF, SECRETARY,
     DEPARTMENT OF HOMELAND SECURITY
12
            Defendant.
13   _____/

14

15          Harpal S. Cheema, an Indian national in custody of the Department of Homeland Security ("DHS"),

16   filed this action on September 14, 2004, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  After

17   reviewing the papers submitted, the Court GRANTS the petition for the reasons discussed below.

18                                 **BACKGROUND**[1]

19          Petitioner Harpal Singh Cheema ("Cheema" or "petitioner") is an Indian national and a baptized Sikh

20   who has been in the custody of the Department of Homeland Security ("DHS") and its predecessor, the

21   Immigration and Naturalization Service ("INS") since November 3, 1997.  He is a "central figure" in the

22   movement to establish an independent Sikh state, Khalistan, and was subjected to persecution in India as a

23   result.  He fled to Canada in August 1990, and came to the United States two months later, where he joined

24   the Sikh Youth of America and participated in lobbying efforts for the cause of Sikh independence.  He

25   returned to India in February 1992, upon learning that his wife was ill, and was arrested and tortured upon his

26

27   _____

28          [1] The factual background information is taken from Cheema's Petition and the Ninth Circuit Court of
     Appeals' decision in this matter.  *See Cheema v. Ashcroft*, 383 F.3d 848 (9th Cir. 2004).

United States District Court
For the Northern District of California

1    arrival.  He was released on bail three months later, and remained in hiding in India until May 1993, when he

2    and his wife arrived in New York City.  They were paroled into the United States but not admitted.  Both

3    petitioner and his wife applied for asylum, withholding of deportation, and relief under Article 3 of the U.N.

4    Convention Against Torture ("CAT").  An Immigration Judge ("IJ") granted petitioner's wife asylum and found

5    her eligible for withholding of deportation and relief under CAT.  The IJ denied petitioner's asylum application

6    and his application for withholding of deportation,[2] but granted the application for "deferral of removal"

7    ("DOR") under the CAT.[3]  See Petition, Ex. 3 at 000510.

8            Both the DHS and petitioner appealed to the Board of Immigration Appeals ("BIA"), the DHS from

9    the withholding of deportation, and petitioner from the denial of asylum.  The BIA issued a decision on May

10   8, 2002, in which it did not disturb the IJ's findings concerning withholding of deportation and relief under CAT.

11   The BIA held that petitioner had engaged in terrorist activity by soliciting funds for "individuals and groups, i.e.

12   Bittu and Panjwar, that he knew or reasonably should have known or at least had reason to believe had

13   committed terrorist activity," and had given material support to these individuals.  Cheema, 383 F.3d at 853.

14   The BIA held that these findings barred withholding of deportation for petitioner, because giving financial

15   support to terrorists and facilitating telephone calls from India  "necessarily endanger[ed] the lives, property and

16   welfare of United States citizens and compromise[d] the defense of the United States."  Id.  The BIA held that

17   petitioner was "ineligible for all forms of relief except deferral of removal under the Convention Against

18   Torture."  Petition, Ex. 2 at 000018.

19           Petitioner appealed to the Ninth Circuit.  In a published opinion, the Court of Appeals affirmed the

20   BIA's finding that some of Cheema's acts constituted terrorist activity, and affirmed the BIA's determination

21   that full relief under CAT was barred.  Cheema, 383 F.3d at 859.  The Court of Appeals also affirmed the

22   _____

23           [2] The IJ denied petitioner asylum because she did not find him credible on the subject of his fundraising
     activities in the United States between 1990 and 1992.  Petitioner raised money in the United States for families
24   in the Punjab and for individuals injured while trying to cross between Pakistan and India, and he put potential
     donors in contact with Daljit Singh Bittu, a leader of the militant wing of the Sikh Student Federation in India,
25   whom petitioner knew as a student in India.  He also took phone calls from individuals in India and connected
     them with Bittu in Pakistan.  In addition, in 1995, while in the U.S., petitioner had contact with the head of the
26   militant Khalistan Commando Force, Paramjit Singh Panjwar.

27           [3] Technically, the IJ ruled that Cheema was entitled to withholding of deportation but was barred from
     this relief as a danger to the U.S. because he had engaged in terrorist activities.  However, the IJ found that
28   Cheema was subject to a discretionary waiver.

United States District Court

For the Northern District of California

1    BIA's holding granting deferral of removal to Cheema.  *Id.*  The Court of Appeals remanded Cheema's

2    petitions for withholding of deportation and asylum, holding that the BIA's conclusion that petitioner was a

3    danger to national security was not supported by "substantial evidence." *Id*. at 857.  The court criticized the

4    BIA's statement that it was "self-evident" that Cheema's activities "inherently involve this country in [foreign]

5    conflicts without our leave or agreement" and "create the very real possibility that such conflicts will be brought

6    home to us by their warring factions," because "[s]ubstantial evidence is required to link the finding of terrorist

7    activity affecting India with one of the criteria relating to our national security." *Id.* at 857-58.  The Court of

8    Appeals remanded Cheema's withholding of deportation and asylum petitions in order for the BIA "to make

9    that determination using the correct inquiry." *Id.* at 859.

10           This petition followed, and is now before the Court.

11

12                                          **LEGAL STANDARD**

13           Cheema's petition for habeas corpus relief was filed pursuant to 28 U.S.C. § 2241.  To obtain relief

14   under this statute, petitioner must demonstrate that "he is in custody in violation of the Constitution or laws or

15   treaties of the United States."  28 U.S.C. § 2241(c)(3).

16

17                                            **DISCUSSION**

18           Petitioner contends that he is under a final order of removal pursuant to 8 U.S.C § 1231, and because

19   his removal is not reasonably foreseeable, his continued detention by the DHS is no longer authorized by statute

20   or under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  According to petitioner,

21   the BIA's May 8, 2002 decision was an administratively final order of removal triggering the statutory removal

22   period under 8 U.S.C. § 1231(a)(1)(B), during which an alien who is ordered removed must be removed by

23   the Attorney General within a period of ninety days.  Petitioner was detained throughout this 90-day period

24   (from May 8, 2002 to August 6, 2002), and he remains detained today, even though the removal period

25   expired approximately three years ago.  Applying *Zadvydas*, he argues that there is no possibility that he will

26   be removed to India in the reasonably foreseeable future because the Ninth Circuit, the BIA, and the IJ have

27   all agreed that he will be tortured there and that CAT prohibits his removal to India.  Accordingly, he seeks

28

3

1   release, contending that his continued detention is no longer authorized.

2       The government opposes Cheema's petition on grounds that he is not subject to an administratively final

3   order of removal, and therefore *Zadvydas* does not apply.  According to the government, because of the Ninth

4   Circuit's remand of his case to the BIA, Cheema is still in "pre-removal order" – rather than "post-removal

5   order" – detention, which is constitutionally permissible.  The government also suggests that, because Cheema

6   is in the process of removal proceedings, his request for release amounts to a request for judicial review of his

7   denial of parole into the United States, and the Court lacks subject matter jurisdiction over such a request.

8

9   **A.   Deferral of removal.**

10      The BIA found that petitioner was "ineligible for all forms of relief except deferral of removal under the

11  Convention Against Torture."  Petition, Ex. 2 at 000018.  The threshold issues are: (1) whether a deferral of

12  removal ("DOR") is governed by 8 U.S.C. § 1231, and (2) if so, whether petitioner's DOR is a final order of

13  removal.

14

15      **1.   Deferral of removal is governed by 8 U.S.C. § 1231.**

16      Before the Court determines whether petitioner's DOR is a final order of removal, the Court must first

17  consider whether a DOR is governed by 8 U.S.C. § 1231.

18      8 U.S.C. § 1231(a)(1)(A) provides:

19      (A) In general.  Except as otherwise provided in this section, when an alien is ordered
        removed, the Attorney General shall remove the alien from the United States within a
20      period of 90 days (in this section referred to as the "removal period").

21  Section 1231 places a requirement on the government to remove an alien subject to a final order of removal

22  within the 90-day removal period.  However, DHS regulations contain conflicting language on whether the

23  government is required to remove an alien granted DOR.

24      The DHS regulations governing DOR state that, although the government is required to defer removal

25  to the country where the alien is more likely than not to be tortured, "the alien *may* be removed at any time to

26  another country."  8 C.F.R. § 1208.17(b)(1), (2) (emphasis added).  This language suggests that, although

27  DOR may be a final order of removal, the government is not required to effectuate the removal.  Furthermore,

28

**United States District Court**
For the Northern District of California

1    DOR does not confer a right to release for aliens in DHS custody.  8 C.F.R. § 1208.17(c) ("Nothing in this

2    section shall alter the authority of the Service to detain an alien whose removal has been deferred under this

3    section and who is otherwise subject to detention."); see Gordon, Mailman, & Yale-Loehr, 3 Immigration Law

4    and Procedure § 33.10[4][b] (2002).  After granting a DOR, the immigration judge "shall inform the alien that

5    deferral of removal will not necessarily result in the alien being released from the custody of the Service if the

6    alien is subject to such custody."  8 C.F.R. § 1208.17(b)(1)(ii).  In petitioner's appeal to the Ninth Circuit, the

7    Court of Appeals apparently recognized that its order remanding the case would not itself result in petitioner's

8    release: "respite from torture  is limited if the consequence is that a petitioner is deliberately detained in custody

9    in this country.  To be offered *indefinite imprisonment* as an alternative to likely torture is to be offered a

10   harsh choice."  *Cheema*, 383 F.3d at 859 (emphasis added).

11         However, the regulations also provide that decisions pertaining to the detention and release of an alien

12   granted DOR "shall be made according to part 241 of this chapter."  8 C.F.R. § 1208.17(c).  8 C.F.R. § 241,

13   which generally governs the detention and removal of aliens ordered removed, explicitly includes DOR with

14   removal orders pursuant to 8 U.S.C. § 1231.[4]  Section 241.4 applies to "aliens granted . . . withholding or

15   deferral of removal under the Convention Against Torture . . ."  8 C.F.R. § 241.4(b)(3).  Under section 241.4,

16   DOR is subject to a 90-day removal period and "the district director *shall* continue to undertake appropriate

17   steps to secure travel documents for the alien both before and after the expiration of the removal period."  8

18   C.F.R. § 241.4(g)(1)(C)(ii), (g)(2) (emphasis added).  This section requires the government to try and continue

19   to try to secure removal for the alien granted DOR during and after the removal period in 8 U.S.C. § 1231.

20   Thus, it appears that the DHS regulations intend to apply 8 U.S.C. § 1231 to grant of DOR.

21         A memorandum from the DHS (then INS) General Counsel suggests that the agency also interprets

22   the regulations so that the removal period and detention of aliens under 8 U.S.C. § 1231 applies to aliens

23   granted DOR:

24         Section 241(a)(1) of the Immigration and Nationality Act (INA) [codified as 8 U.S.C. §
            1231] establishes a 90-day "removal period" that generally commences on the date a

25

26   _____

27         [4] 8 U.S.C. § 1231 governs aliens ordered removed who are inadmissible under section 212 of the
     Immigration and Nationality Act ("INA"), or removable under INA § 237(a)(1)(c) (violated nonimmigrant
     status or condition of entry), INA § 237(a)(2) (criminal offenses), or INA § 237(a)(4) (security and related
28   grounds).  8 C.F.R. § 241.4(a).

removal order becomes administratively final. . . . The memorandum addresses the authority of the Immigration and Naturalization Service (INS) under certain circumstances to release an alien who has a final order of removal, and who has also been granted withholding or deferral of removal, before the 90 day removal period has expired. . . . An alien who has been granted . . . deferral of removal to a specific country under the Convention Against Torture, remains an alien who is subject to a final order of removal.

Mem. from Bo Cooper, No. HQCOU 50/1/1, Detention and Release during the Removal Period of Aliens Granted Withholding or Deferral of Removal (Apr. 21, 2000).  "During the 90-day removal period, the INS must seek to remove the alien [with final orders of removal]."  Mem. from Bo Cooper, No HQCOU 50/1/1, Detention and Release of Aliens with Final Orders of Removal (Mar. 16, 2000).

Based on 8 C.F.R. § 241.4, the Court concludes that detention and removal of aliens granted DOR is governed by 8 U.S.C. § 1231, and therefore that these aliens are subject to the 90-day removal period.

### 2.    Petitioner's DOR is a final order of removal.

Petitioner argues that his DOR is a final order of removal under 8 U.S.C. § 1231(a)(1)(B)(i) because it is a final administrative decision.  Therefore, his removal period began on May 8, 2002, the date of the BIA's decision. The government contends that the grant of DOR is not final because the Ninth Circuit remanded the case to the BIA for reconsideration of the question of withholding of deportation and asylum, where it is still pending.  *See Cheema*, 383 F.3d 848.[5]  The issue this Court must address is whether the Ninth Circuit's remand to the BIA affected the finality of petitioner's order of removal.

A DOR is granted to an alien who (1) has been ordered removed, (2) is entitled to protection under the Convention Against Torture, and (3) is subject to mandatory denial of withholding of removal.  8 C.F.R. § 1208.17(a).  An DOR becomes a final order of removal under 8 U.S.C. § 1231(a)(1)(B) on the latest of the following:

(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

---

[5]  The Ninth Circuit sustained the grant of DOR, and thus regardless of the BIA's disposition on remand, petitioner's DOR will remain intact.  *Id.*

The Ninth Circuit has not addressed the specific issue presented here of whether a final order of removal that has been appealed to the Court of Appeals and sustained in part and remanded in part to the BIA is considered a final order of removal. Here, the Ninth Circuit affirmed the BIA's decision granting DOR, and only remanded Cheema's petitions for withholding of deportation and asylum. *See Cheema*, 383 F.3d at 859-60. Thus, the decision with respect to DOR is final in that it cannot be disturbed on remand. For that reason, the Court concludes that Cheema is subject to a final order of removal, and that his continued detention is reviewable by this Court.

Moreover, the Court concludes that the fairly unusual posture of this case weighs in favor of concluding that Cheema is subject to a final order of removal. On remand, Cheema is only eligible for more relief, not less, under his petitions for withholding of deportation and asylum. Indeed, at oral argument, the government conceded that, had petitioner lost his appeal at the Ninth Circuit, the May 8, 2002 decision would have been a final order of removal; but it took the position that because petitioner partially prevailed and the Ninth Circuit remanded the case to the BIA, petitioner no longer has a final order, and therefore 8 U.S.C. § 1231 does not apply. As petitioner points out, this logic would produce the absurd result that an alien who loses his appeal would be released, while an alien who seeks and obtains the relief provided by law is subject to indefinite detention. Cheema has been detained for approximately eight years, and regardless of how the BIA handles Cheema's petitions for withholding of deportation and asylum on remand, Cheema is now and will always be subject to the deferral of removal order.

The Court also concludes that Cheema's petition to the Ninth Circuit did not destroy the finality of the removal order. Once the BIA issued its removal order, the DHS had full authority to remove petitioner from the United States, even during petitioner's appeal to the Ninth Circuit. See 8 U.S.C. § 1252(b)(3)(B). Had the government attempted to remove petitioner, he could have filed for a stay of removal, which, if granted, would have destroyed the finality of the order of removal, but only until the court granting the stay issued its final ruling. See 8 U.S.C. § 1231(a)(1)(B)(ii). However, that is not the present case. Petitioner never filed for a stay of removal, so the finality of the order was never destroyed.

This Court finds that petitioner's May 8, 2002 DOR issued by the BIA is a final order of removal pursuant to 8 U.S.C. § 1231, and his 90-day removal period began on May 8, 2002.

United States District Court
For the Northern District of California

**B.      Post-removal period detention and applicability of <u>Zadvydas</u>.**

Petitioner argues that since he is subject to a final order of removal pursuant to 8 U.S.C. § 1231, his post-removal period of detention is also governed by that statute.  Because his 90-day removal period ended more than two years ago, and because there is no significant likelihood of removal in the reasonably foreseeable future, petitioner contends that his detention is no longer authorized by statute or by the Supreme Court decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).   The government argues that petitioner is in still in pre-removal proceedings, and therefore neither section 1231 nor *Zadvydas* applies.  It contends that pre-order detention is constitutional under *DeMore v. Kim*, 538 U.S. 510 (2003), and release of petitioner on parole during pre-order detention is entirely within the discretion of the Attorney General.  Because the Court has determined that 8 U.S.C. § 1231 applies, it will now consider the applicability of *Zadvydas*.

In *Zadvydas*, the Supreme Court held that when removal of an alien is no longer reasonably foreseeable, continued detention is no longer authorized by 8 U.S.C. § 1231.  533 U.S. at 699.  *Zadvydas* involved two habeas petitions by noncitizen permanent residents who were deportable but remained detained after their 90-day removal period had expired.  The Supreme Court held that allowing indefinite detention seriously implicated the Fifth Amendment's Due Process Clause.  *Id.* at 690.  It established a burden shifting analysis, so that "[a]fter the 6-month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing"; otherwise, the alien should be released.  *Id.* at 701.[6]

The Supreme Court in *Zadvydas* addressed how a habeas court should proceed when determining "whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably

---

[6] The USA PATRIOT Act limits the application of *Zadvydas*, providing for the mandatory detention of suspected terrorists.  8 U.S.C. § 1226a.  In order for the Act to apply to an alien, the Attorney General may certify that there are "reasonable grounds to believe that the alien (A) is [engaged in terrorist activities]; or (B) is engaged in any other activity that endangers the national security of the United States." § 1226a(a)(3).  Under § 1226a, an alien who has not been removed under 8 U.S.C. § 1231 "and whose removal is unlikely in the reasonably foreseeable future, may be detained for additional periods of up to six months only if the release of the alien will threaten the national security of the United States or the safety of the community or any person." § 1226a(a)(6).  The Act does not apply to petitioner because he has not been certified under the Act.

The *Zadvydas* decision was limited to excludable aliens (aliens who have gained initial entry or have been admitted into the United States).  *Zadvydas*, 533 U.S. at 682.  The Supreme Court has since extended <u>Zadvydas</u> to inadmissible aliens (aliens who have not gained initial entry).  *Clark v. Martinez*, 125 S. Ct. 716 (2005).

United States District Court

For the Northern District of California

1  necessary to secure removal . . . [and] whether the detention is, or is not, pursuant to statutory authority. . . .

2  [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure

3  removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring

4  the alien's presence at the moment of removal." *Id.* at 699-700. Petitioner's detention of almost three years

5  beyond the removal period "exceeds a period reasonably necessary to secure removal." Because petitioner

6  is a major figure in the Sikh movement, and because of the record of torture endured by the petitioner in India

7  beginning in 1987, there does not seem to be a significant likelihood that petitioner would be able to return to

8  India in the reasonably foreseeable future. There also does not seem to be a significant chance that petitioner

9  could be removed to a country other than India in the reasonably foreseeable future. Petitioner has been in

10  custody over seven years, almost three years from the expiration of his removal period on August 6, 2002, and

11  the government has not secured removal to another country.

12          This Court finds that petitioner has no significant chance of removal in the reasonably foreseeable future,

13  thus his continued detention is not authorized by statute.

14

15  **C.          Detention or release review procedures.**

16          Post-removal period detention of inadmissable aliens is governed by 8 U.S.C. § 1231(a)(6), which

17  provides:

18          An alien ordered removed who is . . . removable under . . . section 237(a)(4) [security
          grounds] or who has been determined by the Attorney General to be a risk to the
19          community or unlikely to comply with the order of removal, may be detained beyond the
          removal period, and if released, shall be subject to the terms of supervision in paragraph
20          (3) [of this section].

21  DHS regulations add that after the 90-day removal period, the DHS District Director will review the alien's

22  records to determine if further detention is warranted. 8 C.F.R. § 241.4(c)(1), (h). Further custody

23  determinations of any alien who has not been released or removed within three months after the expiration of

24  the 90-day removal period are made by the Headquarters Post-Order Detention Unit (HQPDU). §

25  241.4(c)(2). In order to be released, the alien must demonstrate that his release will not pose a danger to the

26  community and that he does not present a significant flight risk pending removal. § 241.4(d)(1). In

27  recommending further detention or release, the HQPDU considers several factors, including: (1) disciplinary

28

infractions, (2) criminal conduct, (3) mental health reports, (4) prior immigration violations and history, and (5) favorable factors, including family ties to the United States.  § 241.4(f).  If the panel denies release, it must review the case within one year.  § 241.1(k)(iii).  The regulations state that if the Service finds that there is no significant likelihood of the alien's removal in the reasonably foreseeable future, the Service has the authority to release the alien under an order of supervision.  8 C.F.R. § 241.4(i)(7).

Following the Supreme Court's ruling in *Zadvydas*, the DHS issued new regulations administering special review procedures for aliens detained whose likelihood of removal was not significant in the reasonably foreseeable future.  8 C.F.R. § 241.13.  In such a case, if during or after the custody review process, "the alien submits, or the record contains, information providing a substantial reason to believe that removal of a detained alien is not significantly likely in the reasonably foreseeable future, the HQPDU shall treat that as a request for review and initiate the review procedures under § 241.13."  § 241.4(i)(7).[7]  These regulations were written in language that tracks the language of *Zadvydas*, so they exclude "those who have not entered the United States."  § 241.13(b)(3)(i).  In *Clark v. Martinez*, 175 S.Ct. 716 (2005), the Supreme Court extended *Zadvydas* to inadmissible aliens.  The regulations have not been changed since the ruling in *Clark v. Martinez*, but the Court finds that they should be read to encompass the Supreme Court's directives in this regard.  Accordingly, this Court finds that 8 C.F.R. § 241.13 applies to inadmissible aliens.

## CONCLUSION

This Court hereby finds that: (1) petitioner's DOR is a final order of removal pursuant to 8 U.S.C. § 1231, (2) the principles of the Supreme Court's ruling in *Zadvydas* apply to petitioner's detention, (3) and there is no significant chance that petitioner will be removed in the reasonably foreseeable future.

The Court GRANTS the writ of habeas corpus and ORDERS the DHS forthwith to make a custody determination concerning petitioner's release under an order of supervision.

---

[7] For aliens who have been ordered removed but have been detained on account of security or terrorism concerns, special review procedures are followed according to § 241.14(d).  The review process includes determination if the alien's release presents a significant threat to national security and if there are any conditions of release that can reasonably be expected to avoid such a threat.  § 241.14(d)(1).

**IT IS SO ORDERED.**

Dated: November 16 2005

_____
SUSAN ILLSTON
United States District Judge

11